UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

EDUARD MUNTEANU,                                 :

                Petitioner,            :

      - v -                                  :        **MEMORANDUM DECISION**

MICHAEL LOWE,                                    :        19-CV-3313 (DC)

                Respondent.            :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

APPEARANCES:      EDUARD MUNTEANU
                      Petitioner *Pro Se*
                      BOP Register Number 81659-053

                      BREON PEACE, Esq.
                      United States Attorney
                      Eastern District of New York
                      By:   Michael Robotti, Esq.
                             Shana Priore, Esq.
                             Assistant United States Attorneys
                      271-A Cadman Plaza East
                      Brooklyn, NY 11201
                         Attorney for Respondent

CHIN, Circuit Judge:

        On June 4, 2019, petitioner Eduard Munteanu -- then in the custody of the

Federal Bureau of Prisons ("BOP") at the Brooklyn House Residential Re-Entry Center

("RRC"), a halfway house in Brooklyn, New York -- commenced this action against

respondent, RRC Director Michael Lowe, by filing, *pro se*, a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 (the "Petition").

For the reasons set forth below, the Petition is denied.

## *BACKGROUND*

On October 16, 2014, Munteanu pleaded guilty in the Eastern District of New York to one count of possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), and one count of conspiracy to distribute and possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(b)(1)(B)(ii)(II), 846.  *See* Minute Entry, *United States v. Munteanu*, No. 2:12-CR-00698 (E.D.N.Y. filed Oct. 16, 2014), Dkt. 103; *see also* Superseding Indictment, *United States v. Munteanu*, No. 2:12-CR-00698 (E.D.N.Y. filed Dec. 19, 2013), Dkt. 42.  On March 23, 2016, Munteanu was sentenced to 121 months' imprisonment, followed by a four-year term of supervised release.  *See* Judgment at 2-3, *United States v. Munteanu*, No. 2:12-CR-00698 (E.D.N.Y. filed Apr. 11, 2016), Dkt. 137.  Thereafter, Munteanu's custodial sentence was modified to 96 months' imprisonment.  *See* Amended Judgment at 2, *United States v. Munteanu*, No. 2:12-CR-00698 (E.D.N.Y. filed Aug. 8, 2017), Dkt. 167.

Munteanu served his sentence at various facilities, including FCI Berlin in New Hampshire.  *See* Dkt. 11-1 at 2.  On September 24, 2017, Munteanu was charged with violating Prohibited Act 108, "Possession of a Hazardous Tool," after a cellphone was found hidden between the bed cover and sheets of Munteanu's bunk at FCI Berlin.

2

*See* Dkt. 1 at 11.  Munteanu repeatedly denied ownership of the cellphone and insisted that other inmates had placed the phone on his mattress.  *Id.* at 12-13.  Nonetheless, after two disciplinary hearings, Munteanu was found guilty of violating Prohibited Act 108 and was sanctioned with a loss of forty-one days of good time credit, a loss of phone privileges for one year, and transfer to a higher security facility.  *Id.*

Munteanu appealed the disciplinary findings and sanctions within the BOP, arguing that there was insufficient evidence to find him guilty of the violation and that the proceedings violated his due process rights.  *Id.* at 32, 38.  After exhausting all administrative remedies available to him, Munteanu filed this Petition in the Eastern District of New York on June 4, 2019, raising the same claims for insufficient evidence and deprivation of due process.  *Id*. at 6-7, 20.  At that time, Munteanu was no longer in custody at FCI Berlin, but he was serving the last few months of his custodial sentence at the RRC.  *Id.* at 20.  The Petition sought injunctive relief from this Court -- expungement of the violation of Prohibited Act 108 from Munteanu's disciplinary record and an order requiring the BOP to immediately restore his forty-one days of good time credit.  *Id.*  Because Munteanu's scheduled release date of October 25, 2019, was fast approaching, the Petition also requested expedited review by this Court.  *Id.*

On September 4, 2019, Munteanu was released from BOP custody, *see* https://www.bop.gov/inmateloc/ (last visited June 1, 2023), fifty-one days before his

3

scheduled release date, *see* Dkt. 1 at 20.  Munteanu is still serving his four-year term of supervised release.

After requesting and being granted three extensions of time to respond to the Petition, *see* Dkts. 3, 6, 7, the Government finally submitted its memorandum of law opposing the Petition on December 27, 2019, *see* Dkt. 11.  In its brief, the Government urged, *inter alia*, that the Petition be dismissed as moot because Munteanu was no longer in BOP custody, or in the alternative, that the Petition was meritless because Munteanu received all the process he was due.  *Id.* at 7-13.  Since then, the Petition has remained pending.

On May 12, 2023, the case was reassigned to the undersigned.

## DISCUSSION

### I.   Federal Review of Section 2241 Habeas Petitions

A prisoner in federal custody or awaiting trial for a violation of federal law may seek a writ of habeas corpus.  *See* 28 U.S.C. § 2241(c)(1)-(3).  "A writ of habeas corpus under § 2241 is available to a federal prisoner who does not challenge the legality of his sentence, but challenges instead its execution subsequent to his conviction."  *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001) (citations omitted).  For example, a "petition to expunge [BOP's] disciplinary sanctions from [a

4

petitioner's] record, including the loss of good time credits, . . . is properly brought via an application for a writ under § 2241." *Id.*

Article III, § 2 of the United States Constitution requires the existence of an actual case or controversy through all stages of federal judicial proceedings. A case becomes moot when "the relief sought can no longer be given or is no longer needed." *Martin-Trigona v. Shiff*, 702 F.2d 380, 386 (2d Cir. 1983). "[I]f an event occurs during the course of the proceedings or an appeal that makes it impossible for the court to grant any effectual relief whatever to a prevailing party, [the court] . . . must dismiss the case" as moot. *United States v. Blackburn*, 461 F.3d 259, 261 (2d Cir. 2006) (citation and internal quotation marks omitted).

A petition for habeas corpus relief does not necessarily become moot when the petitioner is released from prison. *See Spencer v. Kemna*, 523 U.S. 1, 7 (1998); *accord Levine v. Apker*, 455 F.3d 71, 76-77 (2d Cir. 2006). Indeed, "a court may provide 'effectual relief' even after a petitioner's imprisonment term has ended by [for example] reducing his term of supervised release," *Colon v. Tellez*, No. 20-CV-5252, 2022 WL 521524, at *2 n.6 (E.D.N.Y. Feb. 22, 2022) (citation omitted), or by expunging an incident from the petitioner's disciplinary record, *see Jefferies v. Billingsly*, No. 11-CV-4198, 2012 WL 34669, at *2 (S.D.N.Y. Jan. 9, 2012) (holding that petitioner's § 2241 petition seeking to expunge an incident report from his disciplinary record and reclaim twenty-seven days of good time credits is not moot despite completion of two-year imprisonment

5

term), *report and recommendation adopted sub nom. Jefferies v. Billingsley*, No. 11-CV-4198, 2012 WL 573718 (S.D.N.Y. Feb. 22, 2012).

A prisoner's due process rights are implicated by disciplinary actions imposing a loss of good time credit because "inmates have a liberty interest in good time credit they have already earned." *Abed v. Armstrong*, 209 F.3d 63, 66-67 (2d Cir. 2000) (citing *Wolff v. McDonnell*, 418 U.S. 539, 556-58 (1974)). Nonetheless, because "[p]rison disciplinary proceedings are not part of a criminal prosecution, . . . the full panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 556. Instead, such proceedings must provide the following due process protections: (1) "notice of the disciplinary charges at least twenty-four hours in advance of the hearing," (2) a "neutral and detached hearing body conducts the hearing," (3) a hearing affording him an "opportunity to present evidence and call witnesses"; (4) "assistance, if necessary, to understand and prepare a defense, and (5) the factfinder provides a written statement of the evidence relied upon in making its decision and the reasons for the decision." *Whalen v. Fed. Bureau of Prisons*, 09-CV-1572, 2011 WL 2669112, at *4 (E.D.N.Y. June 30, 2011) (citations omitted).

II.     *Analysis*

Munteanu, who seeks expungement of the violation of Prohibited Act 108 from his disciplinary record and an order requiring the BOP to restore his forty-one days of good time credit, *see* Dkt. 1 at 20, properly filed the Petition pursuant to § 2241.

6

*See Carmona*, 243 F.3d at 632.  Nonetheless, before addressing the merits of Munteanu's claims, I determine first whether the Petition is moot.

    **1.**    **Mootness**

At threshold, the Government argues that the Petition should be dismissed as moot because Munteanu was released from prison on September 4, 2019. *See* https://www.bop.gov/inmateloc/ (last visited June 1, 2023); *see also* Dkt. 11 at 11-12. I, however, am unpersuaded by this argument.  Although Munteanu has completed his term of imprisonment, he continues to fulfill the "in custody" requirement of § 2241 because he remains subject to a four-year term of supervised release.  *See Scanio v. United States*, 37 F.3d 858, 860 (2d Cir. 1994) (stating that a petitioner who is serving a term of supervised release is "in custody" for purposes of the federal habeas corpus statutes); *see also* Amended Judgment at 3, *United States v. Munteanu*, No. 2:12-CR-00698 (E.D.N.Y. filed Aug. 8, 2017), Dkt. 167.  Pointedly, that Munteanu continues to serve his term of supervised release while the Petition is pending also necessitates the conclusion that his claims for habeas relief are not moot.

As mentioned, "[t]he hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed."  *Martin-Trigona*, 702 F.2d at 386.  Here, if Munteanu's forty-one days of good time credit is restored, "it would decrease the remaining period of supervised release, which 'would constitute effectual relief.'"  *Whalen*, 2011 WL 2669112, at *2 (quoting *Levine*, 455 F.3d at 77 ("[T]he fact that

7

the district court might . . . modify the length of [petitioner's] supervised release would constitute 'effectual relief.'")); *accord Colon*, 2022 WL 521524, at *2 n.6; *Jefferies*, 2012 WL 34669, at *2. Similarly, if the Petition is granted and the disciplinary incident is expunged from Munteanu's record, this too would constitute "effectual relief," *see Jefferies*, 2012 WL 34669, at *2, as "expungement can affect a prisoner's future rights and privileges," *Bradley v. Coughlin*, 671 F.2d 686, 690 n.9 (2d Cir. 1982). A case or controversy thus exists, and Munteanu's Petition is, therefore, not moot.

**2.   The Merits**

I turn now to the merits of Munteanu's claims. The Petition argues, *inter alia*, that the disciplinary proceedings violated his due process rights because (1) the officer who conducted the adjudicating hearing is the spouse of Munteanu's accuser and (2) insufficient evidence supports the conclusion that Munteanu possessed the cellphone found underneath his mattress. Dkt. 1 at 13-16. I address each claim in turn.

**a.   Lack of a Neutral Adjudicator**

Munteanu argues that his disciplinary proceeding failed to comport with the requirements of due process because he lacked a "neutral and detached hearing body." *Wolff*, 418 U.S. at 559. Specifically, Munteanu argues that Lieutenant S. Mayorga, who "issued the incident report that led to the discovery of the cell phone," was in a relationship with Unit Disciplinary Committee ("UDC") Chair A. Lacey, the

8

Case Manager assigned to Munteanu's disciplinary proceedings. Dkt. 1 at 14. This argument, however, lacks merits.

As the Government acknowledges, any alleged relationship between UDC Chair Lacey and Lieutenant Mayorga is irrelevant because Lacey was not the adjudicator in Munteanu's disciplinary proceedings. *See* Dkt. 11 at 17. Rather, Discipline Hearing Officer ("DHO") N. Hayden conducted the hearing and ultimately issued sanctions, including the removal of forty-one days of good time credit. *See* Dkt. 1 at 24-26. Munteanu has not alleged any bias on behalf of DHO Hayden, and the DHO Report does not indicate that the DHO relied on any information from Lieutenant Mayorga in the DHO's finding of Munteanu's guilt. *Id.* at 25-26. Instead, as discussed further below, the DHO Report indicates that this finding was supported by evidence provided by other staff members and Munteanu himself. *Id.* Moreover, even if Lieutenant Mayorga were somehow involved in this investigation, "[a]dministrators serving as adjudicators are presumed to be unbiased," *Allen v. Cuomo*, 100 F.3d 253, 259 (2d Cir. 1996), and Munteanu has offered no evidence to rebut this presumption.

Accordingly, Munteanu has provided no evidence that his disciplinary hearing was not conducted by a neutral and detached hearing, and therefore, his due process claim is without merit.[1]

---

[1] With respect to the other due process requirements, *see Whalen*, 2011 WL 2669112, at *4, the record reflects that Munteanu received the process he was due. Written notice of the charge was given to Munteanu more than twenty-four hours before the hearing. *See* Dkt. 1 at 24. Munteanu waived his right

### b.   *Sufficiency of the Evidence*

Munteanu argues that insufficient evidence supported the DHO's determination that he possessed the cellphone found under his mattress because, at the relevant time, he was housed in an "open dormitory" unit containing seventy-five other inmates, any one of whom could have placed the contraband there. *See* Dkt. 1 at 16. This argument, however, is unpersuasive.

"[R]evocation of good time [credit] does not comport with 'the minimum requirements of procedural due process,' unless the findings of the prison disciplinary board are supported by some evidence in the record." *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985) (internal citation omitted). "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is *any evidence* in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455-56 (emphasis added). In applying this standard, the Second Circuit "has not construed the phrase 'any evidence' literally," but has instead "looked to see whether there was 'reliable evidence' of the inmate's guilt." *Luna v. Pico*, 356 F.3d 481, 488 (2d Cir. 2004).

---

to the assistance of a staff representative to prepare a defense. *Id*. Evidence was presented in two separate hearings, including testimony from prison staff, photographs, and the cellphone itself. *Id*. at 25-26. At no point did Munteanu "request a witness or present written documentation as evidence." *Id*. at 25. Finally, the DHO Report, on its face, shows a diligent "written statement of the evidence relied upon in making its decision and the reasons for the decision." *Whalen*, 2011 WL 2669112, at *4; *see also* Dkt. 1 at 25-26. Munteanu was, therefore, not deprived of due process on any of these accounts.

10

Although Munteanu's cubicle lacked "doors or walls" and "all seventy-five inmates could freely enter the area at any time of the day," Dkt. 1 at 16, the cellphone was found in Munteanu's personal living area, under his mattress.  This location is "not truly a 'common' space . . . , and it can be reasonably expected, in the absence of other evidence, that an inmate will monitor his personal living space to keep it free from contraband."  *Rodriguez v. Lindsay*, 498 F. App'x 70, 72 (2d Cir. 2012) (summary order) (rejecting sufficiency of evidence claim where contraband was found in petitioner's bunk, under his mattress, in an open-dormitory unit shared by 120 other inmates); *see also Johnson v. Goord*, 305 F. App'x 815, 817 (2d Cir. 2009) (summary order) (rejecting sufficiency of evidence claim where bags of marijuana were discovered in the pilaster adjacent to petitioner's cell because even though other inmates also had access to the relevant pilaster, petitioner "had the greater ability to access the pilaster without being observed than other inmates had"); *cf. Broussard v. Johnson*, 253 F.3d 874, 877 (5th Cir. 2001) (concluding that discovery of bolt cutters in kitchen where an inmate worked, which was accessible to 100 other inmates, did not, on its own, amount to "some evidence").  Thus, the mere fact that other inmates could access Munteanu's cubicle does not render insufficient the evidence that the DHO relied on to find him guilty.

Moreover, there was "reliable evidence" to support the finding of Munteanu's guilt.  *See Luna*, 356 F.3d at 488.  As summarized in the DHO Report, the finding of Munteanu's guilt was based on (1) a written account of the incident from

11

Officer D. Moore who found the cellphone between Munteanu's bed cover and sheets, Dkt. 1 at 25; (2) Munteanu's own statement that someone had "thrown an old broken phone in his bunk to set him up," *id.* at 26; (3) a photograph of the cellphone in question, *see id.*; (4) a supporting memorandum from staff member S. Seymour, who reviewed the photograph of the cellphone, concluded that it did not "appear to be broken," and that, because Munteanu knew that it was broken, the cellphone belonged to him, *id.* at 25, and (5) a supporting memorandum from staff member E. Berube providing that because "Munteanu was not presented with the cell phone in question at any time[, t]he fact that [he] knew the phone was broken [suggests that] he is familiar with the cellphone, as it belongs to him," *id.* at 26.  By contrast, to support his theory that the cellphone was planted, Munteanu stated that other inmates were "upset and envious" after he had "won [his] appeal," and therefore, were motivated to get him into trouble, but he presented no evidence to this effect.  *Id.* at 26.  On this record, the DHO reasonably concluded that the "greater weight of evidence" supported the conclusion that Munteanu was guilty of the violation.  *Id.*

Accordingly, because DOH's finding that Munteanu possessed the cellphone is supported by "reliable evidence" in the record, *Luna*, 356 F.3d at 488, Munteanu's sufficiency of evidence claim fails.[2]

---

[2]  The Petition raises a third claim -- that imposition of the disciplinary sanctions in this instance violated Munteanu's equal protection right.  As evidence of this claim, Munteanu asserts that contraband was discovered in the possession of two other inmates during the same cell block search that uncovered

12

*CONCLUSION*

For the reasons set forth above, Munteanu's request for relief under 28 U.S.C. § 2241 is denied. I certify, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal taken from this decision and order would not be taken in good faith.

The Clerk of the Court shall enter judgment accordingly and close this case. The Government is directed to forward a copy of this memorandum decision and the judgment to Munteanu, whose address is known to the Government through his probation officer.

SO ORDERED.

Dated:     New York, New York
           July 17, 2023

                                    _____
                                    DENNY CHIN
                                    United States Circuit Judge
                                    Sitting By Designation

---

his cellphone, but that those inmates were not charged. See Dkt. 1 at 18-19. According to the records from Munteanu's disciplinary hearing and appeal, it appears that Munteanu is now raising this argument for the first time. Nor did Munteanu present evidence to this effect or call these inmates as witnesses during his disciplinary hearing or internal appeals. See Dkt. 1 at 24-26, 30-38. Moreover, there is nothing in the DHO report, see Dkt. 1 at 22-23, or in the Petition, see id. at 18-19, that substantiates this claim. Munteanu asserted that he knew about these uncharged violations from speaking with the two other inmates who had their cell phones confiscated, id. at 18, but he presented no evidence to show that such a conversation ever occurred. Thus, because Munteanu fails to present any evidence to support this claim, it is also without merit and must be dismissed. See Zimmerman v. Burge, 06-CV-0176, 2008 WL 850677, at *1 (N.D.N.Y. Mar. 28, 2008) (dismissing equal protection claim for unequal treatment in prison disciplinary proceedings "because there are no factual predicates for such a claim").